## BENEVENTO v. UNITED STATES et al.
### No. 184, Docket 20485.

Circuit Court of Appeals, Second Circuit.

March 29, 1947.

————◇————

Edward Ash, of New York City (John J. O'Connor, Sidney A. Schwartz, and John P. Wourms, all of New York City, on the brief), for Union Stevedoring Corporation, appellant.

J. M. Estabrook, of New York City (John F. X. McGohey, U. S. Atty., Haight, Griffin, Deming & Gardner, and J. Ward O'Neill, all of New York City, on the brief), for the United States and American Export Lines, Inc., respondents-appellees, and E. S. Land, impleaded respondent-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

An impleaded respondent is here seeking to implead the War Shipping Administrator in a libel for personal injuries to which the United States of America is already a party respondent. The libel was begun under the Suits in Admiralty Act, § 1 et seq., 46 U.S.C.A. § 741 et seq., by a longshoreman against the United States and American Export Lines as owner and operating agent respectively of the S. S. Woodrow Wilson. In his libel, Benevento, the libelant, alleged that the unseaworthiness of the vessel caused an accident in which he was severely injured. Respondents, acting under Admiralty Rule 56, 28 U.S.C.A. following section 723, impleaded Union Stevedoring Corporation, which, pursuant to contract, had been performing stevedoring work on the vessel when the accident occurred. In impleading Union, respondents claimed that the accident was caused not by unseaworthiness of the vessel, but by Union's negligent stevedoring. They also urged that if they suffered a judgment, they would be entitled, under the contract, to recover over against Union. Union's exceptions being overruled, D.C.S.D.N.Y., 68 F.Supp. 347, it then petitioned to implead the War Shipping Administrator as its indemnitor, under the contract, against liability arising from the negligence of its employees. The District Court dismissed this petition, and Union appeals.

Although the order of dismissal was thus not one terminating the entire litigation, it is appealable under the 1926 amendment to 28 U.S.C.A. § 227, since it finally determines the "rights and liabilities" between the Administrator and the appellant. Barbarino v. Stanhope S. S. Co., 2 Cir., 151 F.2d 553. Oneida Nav. Corp. v. W. & S. Job & Co., 252 U.S. 521, 40 S.Ct. 357, 64 L.Ed. 697, cited to the contrary, was decided before the amendment.

On the merits, much of the argument has turned upon the question of suability of the War Shipping Administrator. Appellant relies upon Dollar v. Land, App. D.C., 154 F.2d 307, which held the members of the United States Maritime Commission subject to suit. It then points to the presidential order by which the War Shipping Administration was established, as transferring all the functions, duties, and powers of the Commission to the Administrator. Executive Order No. 9054, 7 F.R. 837, 50 U.S.C.A.Appendix, § 1295 note. Against this, the United States argues that Dollar v. Land, now before the Supreme Court on this very issue, Land v. Dollar, 67 S.Ct. 62, sustained merely the grant of an injunction against claimed illegal acts of members of the Commission. It refers further to several special statutes making the United States, rather than the Commission, the active party litigant in the several situations to which the legislation was addressed, 46 U.S.C.A. §§ 1128d and 1128e, 1141, 1211, 1242(d). And it stresses the restriction of the Suits in Admiralty Act to libels against the United States or a government-owned corporation. 46 U.S.C.A. § 742. But appellant rests jurisdiction of its claim against the Administrator purely upon the maritime contract, thus meeting also the claimed lack of service upon the Attorney-General as required by the Act. Indeed, so far does appellant press this point that it says it has therefore filed its impleading petition "to thereafter await the entry of the Administrator into the jurisdiction to be served by the Marshal."

This suggestion indicates some of the difficulties of liability when directed against the Administrator. Since he is not a legal entity, the Administrator must be sued as an individual. But appellant does not seek a personal liability against him. What might happen, should he never come into the jurisdiction, is not stated; but it is an insistent question, since, as is publicly known, not only has Admiral Land resigned, but the functions of the War Shipping Administration were transferred back to the Commission as of September 1, 1946, for purposes of liquidation. Act July 8, 1946, c. 543, § 202, 60 Stat. 501, U.S.Code Cong.Serv.1946, p. 479, 50 U.S.C.A.Appendix, § 1291 note. The difficulty is not obviated by naming the "Legal Successor" of Admiral Land, since, if the action is to be continued against the successor, substitution must be made in the manner and within the time provided by statute. 28 U.S.C.A. § 780. But it has often been recognized that the intertwined questions of suability of public officials and of governmental immunity from suit are beset with difficulties and hedged about with fictions. Compare the interesting analysis, Block, Suits against Government Officers and the Sovereign Immunity Doctrine, 59 Harv.L. Rev. 1060. We think this case capable of solution, however, without attempting now to traverse this morass. For it seems to us that all obligations and duties in the premises rest directly upon the United States, already a full party, and not upon the Administrator.

First, we turn to the contract itself. It was one for stevedoring services on vessels owned by the United States. The contract form appearing in the record recited that it was entered into by the stevedore and the Administrator "representing the United States of America." It had a place for the signature of "United States of America By: E. S. Land, Administrator War Shipping Administration By: —— For the Administrator." From the substance and form of the contract it appears that the United States was the party to it and the Administrator was merely its agent. Certainly there is no indication that the Administrator required the stevedoring services for his personal benefit. On the contrary, the services were for the benefit of the United States. And while the contract does state the Administrator's "duties" of performance, it is clear that the ultimate liability is

against the United States. In fact the participation of the United States in the contract as a principal in this and similar contracts seems never to have been questioned or denied. Under these circumstances recovery under the contract may be had not against the agent, but only against the United States. Hodgson v. Dexter, 1 Cranch 345, 363, 364, 5 U.S. 345, 363, 364, 2 L.Ed. 130; Parks, Adm'r, v. Ross, 11 How. 362, 374, 52 U.S. 362, 374, 13 L.Ed. 730; see also Belknap v. Schild, 161 U.S. 10, 17, 16 S.Ct. 443, 40 L.Ed. 599; District of Columbia v. Camden Iron Works, 181 U.S. 453, 560, 21 S.Ct. 680, 45 L.Ed. 948. It is true that in Sloan Shipyards Corp. v. United States Shipping Board Emergency Fleet Corp., 258 U.S. 549, 568, 42 S.Ct. 386, 66 L.Ed. 762, the Emergency Fleet Corporation was considered also a party to a contract having wording as to parties similar to that involved here. The opinion in that case, 258 U.S. 549, 565, 42 S.Ct. 386, 388, 66 L.Ed. 762, points out, however, that "The Shipping Act [which authorized the organization of the Emergency Fleet Corporation] contemplated a corporation in which private persons might be stockholders and which was to be formed like any business corporation under the laws of the District, with capacity to sue and be sued." We are dealing here, however, not with a statutory corporation, but with an individual, the chief of an Executive Bureau set up by Executive Order. The wording of this contract seems to have been influenced by that of the earlier contract (as is the habit of governmental precedents in spawning extensive progeny). But the difference in organization of shipping control in the two World Wars and the conspicuous failure in the present emergency to organize a separate governmental corporation for direction and operation of shipping strongly suggest the differing legal situation.

Further, and quite pointedly, there is no practical utility in the impleading of the Administrator here. In Defense Supplies Corp. v. United States Lines Co., 2 Cir., 148 F.2d 311, certiorari denied 326 U.S. 746, 66 S.Ct. 43, we held that the United States could not sue itself under the Suits in Admiralty Act through the medium of a government-owned corporation. Here this negative position has even more support, for the issue here presented is at furthest extension only one of division of losses between the United States and one of its executive agencies. Libelant himself cannot win a direct judgment against Union; his exclusive direct remedy against Union lies under the Longshoremen's and Harbor Workers' Compensation Act, §§ 1, 5, 33 U.S.C.A. §§ 901, 905. South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 256, 257, 60 S.Ct. 544, 84 L.Ed. 732; Bowen v. Shamrock Towing Co., 2 Cir., 139 F.2d 674, 676. If he recovers against the United States liability for the judgment as among Union and the other respondents will be determined on the basis of the contract. Union's rights against the Administrator would therefore depend upon the same clauses which determine its rights against the United States. Consequently they would be no greater against the Administrator than against the United States. If the United States, being held liable, recovered over against Union under the contract, Union could not recover over, under the same contract, against the Administrator, the agent of the United States. If, on the other hand, the United States did not recover over, Union would need no rights against the Administrator. The United States is solvent and admits that it is a proper party respondent to the libel. Full jurisdiction of the court over all aspects of the contract is settled under American Stevedores, Inc., v. Porello, 67 S.Ct. 847. Therefore Union could have gained nothing from the granting of its petition to implead the Administrator, and loses nothing from the denial of it.

Appellant also contends that the United States could not raise the issue on behalf of the Administrator, citing Florence Cotton Oil Co. v. Alabama Towboat Co., 5 Cir., 128 F. 915, 918. But it seems that the court has discretion to refuse the impleader, cf. General Taxicab Ass'n v. O'Shea, 71 U.S. App.D.C. 327, 109 F.2d 671, 672; 1 Moore's Federal Practice 741, 754, and the reasons which support the responsibility of the United States for acts of the Administrator under the contract demonstrate the former's interest in securing the latter's dismissal.

Affirmed.