**WEST AFRICA NAVIGATION, LTD., OF MONROVIA, Libellant,**

v.

**ORE & FERRO CORPORATION, Respondent.**

United States District Court S. D. New York.

Sept. 27, 1960.

Tashof & Sobler, New York City, for libellant.

Manning, Hollinger & Shea, New York City, for respondent.

MacMAHON, District Judge.

Libellant moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., for summary judgment on the ground that there is no issue of fact which would require a trial on the merits.

At the threshold, respondent questions libellant's right to invoke the summary judgment rule in an admiralty action. Some recent cases have held that summary judgment was available in admiralty actions. E. g., Kalyvakis v. The

Olympia, D.C.S.D.N.Y.1960, 181 F.Supp. 32. The subsequent Supreme Court decision of Miner v. Atlass, 1960, 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462, casts some doubt on the use of civil rules in the admiralty field. Admiralty Rule 27, however, provides in effect for summary judgment by permitting exceptive allegations which perform the functions of a common-law demurrer. Suspine v. Compania Transatlantica Centroamericana, D.C.S.D.N.Y.1940, 37 F.Supp. 263, 264–265. See Richfield Oil Corporation v. United States, 9 Cir., 1957, 248 F.2d 217, 225; Benevento v. United States, D.C. S.D.N.Y.1946, 68 F.Supp. 347, affirmed 2 Cir., 1947, 160 F.2d 487.

Despite my doubts as to the continued use of Rule 56 in the admiralty field since Miner v. Atlass, supra, I believe that a rejection of this motion on any grounds other than the merits would serve no useful purpose.

Libellant, the owner of the S.S. African King, entered into a charter party with respondent, Ore & Ferro Corporation, on March 28, 1958. After termination of the charter, respondent paid over the freights due libellant, less $4,541.66 which respondent claims it was allowed to deduct as dispatch money. The sole issue in the case concerns the method of computing the amount of dispatch money which the charterer-respondent was allowed to deduct.

Paragraph 11 of the charter party reads as follows:

"Demurrage (if any) is payable to the owners at the rate of $1,000.-00 per running day or pro-rata for part thereof. Owners are to allow Charterers despatch (sic) money at the rate of $500.00 per day, or pro-rata for part thereof, for all time saved in loading and discharging. Charterers are to have the right to average the days allowed for loading and discharging."

Demurrage is a penalty imposed on the charterer for failing to load or discharge within the time specified by the charter. Dispatch money, on the other hand, is a

reward payable to a charterer for loading in less than the specified time, Gilmore & Black, The Law Admiralty (1957), pp. 184–187. The obvious rationale of these practices is to reduce or compensate for the non-productive layover time of the ship.

Libellant claims that the term "all time saved" in paragraph 11 means all the time saved from loading or discharging operations and does not include non-working days. This assertion is grounded on the fact that paragraph 4 of the charter party specifically states that "Sundays and stevedoring holidays (are) always excepted from lay days."

Respondent, on the other hand, claims that the expression "all time saved" is understood in the admiralty field to mean "all time saved to the ship" and necessarily includes Sundays and holidays when, because of prompt loading and discharging, a ship is able to be at sea. Some of the cases and authorities cited by the respondent, e. g., Mawson Steamship Co. v. Beyer, [1914], 1 K.B. 304; Scrutton on Charterparties, 359 (16th Ed. 1955), and Poor on Charter Parties, 128 (4th Ed. 1954), support its contention, at least to the extent that there is a presumption that the expression "all time saved" means all time saved to the ship, including Sundays and holidays. Red "R" S.S. Co. v. North American Transport Co., 2 Cir., 1898, 91 F. 168 and West India S.S. Co. v. Field Line, Ltd., D.C.S.D.N.Y.1910, 196 F. 591, also relied on by respondents, are not in point since they involved clauses where dispatch money was allowed expressly for "running days". Britain S.S. Co. v. George E. Warren Corp., D.C.D.Mass., 22 F. Supp. 197, affirmed 1 Cir., 1938, 100 F.2d 283, relied on by libellant, also appeared to turn on the "reversible" aspect of the dispatch clauses, whereas the clause in the instant case allowed the charterer to "average" the days. See Scrutton on Charterparties, 354 (16th Ed. 1954).

■ Ordinarily, the construction of a contract is a question of law which may be decided by the court, Rolle Mfg. Co. v. Marco Chemicals, D.C.D.N.J.1950, 92 F.Supp. 218, but if the contract is ambiguous, a question of fact exists, Steele v. McCargo, 8 Cir., 1958, 260 F.2d 753, and summary judgment should be denied. Rolle Mfg. Co. v. Marco Chemicals, supra; 6 Moore, Federal Practice ¶ 56.17 [43], at 2236 (2d Ed. 1953). In that event, the parties are entitled to present evidence as to the circumstances surrounding the execution of the contract, so that the court can determine the intention of the parties at the time they entered into the agreement. Sarnia Steamships v. Continental Grain Co., 7 Cir., 1941, 125 F.2d 362. The initial determination that a contract is ambiguous is, of course, for the court, Steele v. McCargo, supra, and the mere fact that parties disagree with the construction of a contract does not establish ambiguity. Cole v. Ross Coal Co., D.C.S.D.W. Va., 150 F.Supp. 808, affirmed 4 Cir., 1957, 249 F.2d 600.

■ The presumption relied on by the respondent that the term "all time saved" in the charter party means all time saved to the ship, conflicts with the express language of paragraph 11 which provides for demurrage per *running* day and dispatch per day. Another factor which must be considered in the computation of dispatch money is the custom of the particular port or ports involved. Scrutton on Charterparties, 355 (16th Ed. 1954). The custom can only be determined by the testimony of witnesses expert in the field.

To my mind, the clause in paragraph 11 is ambiguous, and the respondent is entitled to show on a trial his versions of (1) the custom of the ports involved by the testimony of expert witnesses, and (2) the intention of the parties at the time the charter party was executed. Motion denied. So ordered.